UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                :

EDGAR TACURI ex rel. ANDERSON OMAR    :
TACURI GUANOLUISA,                :

                :

            Petitioner,       :        25-CV-07012 (JAV)

                :

      -v-             :        <u>OPINION AND ORDER</u>

                :

LADEON FRANCIS, et al.,          :

                :

           Respondents.     :

                :

------------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

On August 22, 2025, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 was filed on behalf of Anderson Omar Tacuri Guanoluisa ("Petitioner") by Edgard Tacuri, the Petitioner's father, as next friend ("Mr. Tacuri"). ECF No. 1 ("Petition") at 1-2; ECF No. 1-1 ("Tacuri Decl.") at 1. The Petition names as Respondents LaDeon Francis, in his official capacity as Acting Field Office Director for Immigration and Customs Enforcement's ("ICE") New York Field Office, Kristi Noem, in her official capacity as Secretary of Homeland Security, and Pam Bondi, in her official capacity as the Attorney General (collectively, "Respondents" or the "Government"). Petition at 1. On October 6, 2025, Respondents moved the Court to transfer the case to another court or, alternatively, to dismiss the case without prejudice to refiling elsewhere. ECF No. 12 ("Mot.") at 1. For the following reasons, Respondents' motion is DENIED.

## BACKGROUND

Petitioner is a national and citizen of Ecuador who entered the United States near Patagonia, Arizona when he was fifteen years old in May 2023.  Petition, ¶ 9; ECF No. 14 ("Kenney Decl."), ¶¶ 2-3.  On May 15, 2023, U.S. Customs and Border Protection arrested Petitioner for unlawfully entering the United States and transported him to the Sonoita Border Patrol Station for further processing. Kenney Decl., ¶ 3.  On May 26, 2023, Petitioner was released to the care and custody of his father and sponsor, Mr. Tacuri, in Yonkers, New York.  *Id.*, ¶ 4. Petitioner later filed an I-589 application requesting asylum or protection from deportation.  *See* Petition, ¶ 9.

On October 4, 2023, U.S. Immigration and Customs Enforcement ("ICE") served Petitioner a Notice to Appear ("NTA"), charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i).  Kenney Decl., ¶ 5.  On October 5, 2023, the NTA was filed in the Broadway Immigration Court, thereby commencing proceedings against Petitioner.  *Id.*, ¶ 6.

On August 21, 2025, Petitioner was scheduled to appear for a hearing before the Executive Office for Immigration Review in Yonkers, New York.  *Id.*, ¶ 10; Kenney Decl., ¶ 7.  At the conclusion of the hearing, Petitioner was granted a subsequent hearing on January 13, 2026, at 10 AM.  Petition at 3; *see generally* ECF No. 13 ("Mem.").  Upon exiting the courtroom, however, Petitioner was arrested by ICE officials per an administrative Warrant of Arrest and transported to ICE's temporary hold room at 26 Federal Plaza, New York, New York.  Petition,

¶ 10; Kenney Decl., ¶¶ 7-8.

The Petition alleges that, from the time he was first detained in ICE's hold room on August 21, 2025, until at least the time of filing the following day, Petitioner was "given one phone call per day of about [five] minutes and [was] not allowed to contact counsel or anyone that would be able to assist with his matter." Petition, ¶ 12.  Further, Petitioner alleges that his "immigration counsel . . . made repeated attempts to contact [Petitioner]," but "[w]as not . . . allowed to do so."  *Id.*  Petitioner claims he was also "not notified by [ICE] of any availability to file bond or a habeas corpus petition, and was denied the opportunity to seek release."  *Id.*, ¶ 13.  Specifically, Petitioner alleges that he "did not receive any notice or opportunity to be heard as to whether a change of custody was warranted," was not "allowed to call any nonprofit," and was not given "any opportunity to seek representation given strict limitations on call time."  *Id.*, ¶¶ 14, 16.

On August 22, 2025, at approximately 12:00 PM EDT, Petitioner was transported from 26 Federal Plaza to Newark Liberty International Airport in Newark, New Jersey, where he arrived at approximately 1:00 PM EDT.  Kenney Decl., ¶¶ 8-9.  At approximately 9:20 PM EDT that same day, an ICE Air Operations charter flight, with Petitioner aboard, departed Newark Airport.  *Id.*, ¶ 10.  At 11:22 PM EDT, while the plane was in transit, Petitioner's father or other representative filed the instant action through the Court's *Pro Se* Intake Unit. Mem. at 2 n.1.  On August 23, 2025, at 12:55 AM EDT, the ICE Air Operations charter flight landed in El Paso, Texas.  Kenney Decl., ¶ 11.  At approximately 3:00

3

AM EDT, Petitioner was booked into ICE's "soft-sided" El Paso facility for temporary accommodation. *Id.*, ¶ 12. On August 25, 2025, Petitioner was transported to ICE's East Montana Detention Facility in El Paso, Texas. *Id.*, ¶ 13. As of October 6, 2025, Petitioner remained confined at the East Montana Detention Facility. *Id.*, ¶ 13.

Respondents now move the Court to "transfer this action to the proper court or dismiss it without prejudice to refiling." Mem. at 3. Respondents argue that, since "Petitioner had been outside of the Southern District of New York for roughly 11 hours before he filed his habeas petition in this Court," "this Court lacks habeas jurisdiction over this action." *Id.* (citation omitted). Consequently, Respondents seek transfer of this matter. While adamant that this Court lacks habeas jurisdiction, Respondents do not explicitly identify where venue lies, taking "no position" as to whether the matter should be transferred to the District of New Jersey or the Western District of Texas. *See id.* at 5 n.5.

## LEGAL STANDARDS

The submissions of a *pro se* litigant "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Johnson v. City of New York*, No. 23-CV-3018 (DEH), 2024 WL 3520445, at *4 (S.D.N.Y. July 23, 2024) (quoting *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.* (quoting *Meadows*, 963 F.3d at 243). Ultimately, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Id.* (quoting

*Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

## DISCUSSION

There are "two traditional requirements for a federal court to entertain a habeas petition" challenging a person's physical confinement: the petition must (1) "be filed in the district of confinement" and (2) "name the petitioner's immediate custodian." *Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004)). These requirements apply equally to challenges to the legality of immigration detention. *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (finding that detainees' "claims for relief [that] necessarily imply the invalidity of their confinement . . . fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas") (cleaned up). Together, the immediate-custodian and district-of-confinement rules "serve[] the important purpose of preventing forum shopping by habeas petitioners." *Padilla*, 542 U.S. at 447. "These jurisdictional rules for habeas petitions do not implicate the Court's subject-matter jurisdiction and are treated functionally as matters of personal jurisdiction or venue." *Ozturk v. Trump*, 779 F. Supp. 3d 462, 475 (D. Vt.), *amended sub nom. Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025).

The district of confinement is the district where petitioner is physically confined "[a]t the time the petition was filed." *Ozturk*, 136 F.4th at 391. The immediate custodian, in turn, is generally the person "with the ability to produce the prisoner's body before the habeas court." *Padilla*, 542 U.S. at 435.

In many cases, application of these rules is straightforward. But complexities can be introduced by the Government's transfer of a detainee to

5

another district. So, for example, "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Id.* at 441.

Yet what happens if the location of the petitioner or the identity of the custodian is not known by the detainee's counsel or next friend at the time a petition for the writ is filed on their behalf? "When . . . a prisoner is held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules." *Id.* at 450 n.18 (discussing *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986)). To address this issue, an exception to the *Padilla* requirements has been recognized, commonly referred to as the "unknown custodian exception." *See, e.g., Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *4 (4th Cir. July 1, 2025) (citing cases). The unknown custodian exception ensures that actions taken by the Government do not serve to deprive individuals of their right to challenge the legality of their confinement, and to "prevent the Kafkaesque specter of supplicants wandering endlessly from one jurisdiction to another in search of a proper forum." *Eisel v. Sec. of the Army*, 477 F.2d 1251, 1258 (D.C. Cir. 1973). It is consistent with the tradition "that there is no gap in the fabric of habeas—no place, no moment, where a person held in custody in the United States cannot call on a court to hear his case and decide it." *Khalil v. Joyce*, 777 F. Supp. 3d 369, 410 (D.N.J. 2025).

The Second Circuit's decision in *Ozturk* is instructive on this point. There, a

6

petition for a writ of habeas corpus was filed in the District of Massachusetts, where the petitioner had been taken into custody by ICE. *Ozturk*, 136 F.4th at 390-91. Unbeknownst to her attorney, at the precise time the petition was filed, the petitioner was physically in the District of Vermont, in transit to a detention facility in that state. *Id.* She was detained for six hours at the Vermont facility, after which time she was moved to a detention facility in Louisiana. *Id.* The district court transferred the petition to Vermont pursuant to 28 U.S.C. § 1631. *Id.* at 391. The Second Circuit held that the transfer to Vermont was proper, even though the petitioner was in Louisiana at the time of the transfer, because the district of confinement must be ascertained with reference to the petitioner's place of detention at the time the petition was filed. *Id.*; *see also Khalil v. Joyce*, 771 F. Supp. 3d 268, 286-90 (S.D.N.Y. 2025) (holding that the District of New Jersey was the district of confinement where petitioner was originally detained at an ICE facility in New York, his habeas petition was filed while he was in transit but confined at an ICE facility in New Jersey for overnight detention, and he was ultimately transferred to an ICE facility in Louisiana).

Of particular relevance to this case, the Second Circuit then applied the unknown custodian exception to the habeas jurisdiction rules. *Ozturk*, 136 F.4th at 392-93. The Court noted that, at the precise time the petition was filed, the petitioner had not yet arrived at the facility in Vermont and thus was not under the authority of the warden there. *Id.* at 393 n.3. Moreover, the Government had not disclosed the petitioner's location to the petitioner's counsel while she was in

transit, withholding this information intentionally because "it does not permit immigration detainees to communicate about their location while enroute between detention facilities" for reasons of operational security. *Id.* at 392. The Government nonetheless argued that the unknown custodian rule did not apply because the custodian's identity was not a "prolonged secret," but had been concealed for only 24 hours. *Id.* at 393. The Second Circuit rejected this "extraordinary proposition, the practical effect of which would be that for some unspecified period of time after detention—seemingly however long the government chooses to take in transporting a detainee between states or between facilities—a detainee would be unable to file a habeas petition at all, anywhere." *Id.* In such cases, where "the petitioner is held in an undisclosed location by an unknown custodian," "the naming of a more remote custodian—here, the Secretary of Homeland Security—satisfies the statutory requirements." *Id.* at 392.

Here, as in *Ozturk,* the unknown custodian exception applies. ICE officials arrested Petitioner in New York on August 21, 2025, and flew him to Texas on August 22, 2025. The Petition, which was filed within one day of Petitioner's arrest, represents that "Petitioner . . . continues to be detained [at 26 Federal Plaza]." Petition, ¶ 12. Petitioner's next friend now knows this representation was incorrect, but neither Petitioner's next friend nor anyone else seeking to act on Petitioner's behalf could have known that at the time of filing. Respondents do not represent that the information about where ICE officials were planning to transport Petitioner had been made available through ICE's online detainee locator or

otherwise. *See* Mem. at 1-6. Accordingly, the Court finds that such information was not available to individuals exercising reasonably diligent effort at the time that Petitioner's next friend filed the Petition. *See Suri v. Trump*, 785 F. Supp. 3d 128, 143-44 (E.D. Va. 2025) ("An exception to the district of confinement rule must apply when, after reasonably diligent effort, the district in which the petitioner was confined could not have been determined."). The Petitioner's naming of the Secretary of Homeland Security as Respondent therefore satisfies the immediate custodian requirement.

Yet this case presents a further wrinkle not present is *Ozturk*, because Petitioner was neither here, nor there, but in the air when his habeas claim was filed. At the precise moment his Petition was filed, Petitioner was on an ICE Air Operations charter flight from Newark to El Paso. Because he was not physically detained in any judicial district at that time, no district satisfies the district-of-confinement rule for purposes of transfer.

The few courts to have confronted this precise fact pattern are divided as to how the district-of-confinement rule applies. Some courts have held that the last-known district of detention is the proper habeas venue. *See, e.g.*, *Tran v. Hyde*, No. 25-CV-12546 (ADB), 2025 WL 3171210, at *3-5 (D. Mass. Nov. 13, 2025) (holding that the District of Massachusetts was the district of confinement where petitioner was originally detained at an ICE facility in Massachusetts, the habeas petition was filed while petitioner was in transit by airplane from Massachusetts to New York, and petitioner was ultimately transferred to an ICE facility in New York); *Munoz-*

*Saucedo v. Pittman*, 789 F. Supp. 3d 387, 392-94 (D.N.J. 2025) (holding that the District of New Jersey was the district of confinement when petitioner was originally detained at an ICE facility in New Jersey, habeas petition was filed while petitioner was in transit by airplane from New Jersey to Texas, and petitioner was ultimately transferred to an ICE facility in Texas).

Conversely, at least one court has held that the petition should be filed in the destination district. *See Mbabid v. Baker*, No. 25-CV-3505 (MJM), 2025 WL 3211024, at *2-3 (D. Md. Nov. 18, 2025) (holding that the Western District of Texas was the district of confinement where petitioner was originally detained in Maryland, the habeas petition was filed while petitioner was in transit by airplane from Maryland to Texas, and petitioner was ultimately transferred to an ICE facility in the Western District of Texas). Yet in that case, the district court found that the unknown custodian exception did not apply because ICE had informed the petitioner's counsel of the location of the transferee facility. Unlike here, "[t]here was no effort by the government to deprive Petitioner's counsel of his location when his petition was filed." *Id.* at *3.

The Court concludes that, on this record, habeas venue properly lies in the last-known location of detention at the time the Petition was filed, the Southern District of New York. *Padilla* makes clear that there is exactly *one* appropriate district in which a habeas petition can be brought. 542 U.S. at 443 ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one

10

district: the district of confinement."); *see also Ozturk*, 136 F.4th at 391 (applying

*Padilla*).  And as *Ozturk* underscores, there must at all times be a district in which

a habeas petition can properly be filed.  136 F.4th at 393.  A rule that the last-

known place of detention is the district of confinement when a detainee is in air

transit at the time of filing is consistent with these principles.  *Cf. Suri*, 2025 WL

1806692, at \*6 ("[I]f the government moves a detainee from a district and their

attorney cannot discover their location with reasonable inquiry, that attorney must

be able to file a habeas petition in the detainee's last-known location against their

ultimate custodian.  Otherwise, that detainee would lack the ability to seek habeas

relief as long as the government kept their location and custodian a secret.").

In contrast, were the Court to adopt Respondents' suggestion, there would be

a period of time where no district could properly adjudicate the Petition.  Petitioner

had not arrived in the Western District of Texas when his Petition was filed, no

official in that district had assumed custody over him, and no one in that District

would have been able to produce Petitioner to the Court or effectuate his release.[1]

Moreover, Petitioner's family did not and could not know that Petitioner was being

removed from New York and taken to the Western District of Texas, and thus could

not have filed in that district on his behalf.

---

[1] Both Petitioner and Respondents have suggested that the District of New Jersey might serve as the last-known district of confinement, as Petitioner departed from Newark, New Jersey, en route to his confinement in Texas.  ECF No. 11 at 3-4; Mem. at 5 n.5.  The record indicates that Petitioner was never in custody at any detention facility in New Jersey, however.  Rather, he was escorted directly to a plane by ICE officials from the New York Field Office and remained in their custody at Newark Airport until the plane departed.  Kenney Decl., ¶¶ 8-10.

11

Such a rule additionally comports with traditional venue considerations. *Cf. Suri*, 785 F. Supp. 3d at 149 (holding that resorting to traditional venue considerations is appropriate when applying the default rules of habeas jurisdiction became untenable). The Southern District of New York—where Petitioner resides with his father, was arrested on August 21, 2025, and was detained until August 22, 2025—has a strong interest in hearing Petitioner's habeas petition. Moreover, Respondents are not prejudiced by litigating Petitioner's matter here.

Accordingly, the Southern District of New York was, at the time the Petition was filed, "the one and only district in which [petitioner] could have filed [his habeas claims] when he did." *Khalil*, 771 F. Supp. 3d at 290.

## CONCLUSION

For the reasons stated herein, the Court has jurisdiction to hear Mr. Guanoluisa's habeas petition, and Respondents' motion to transfer or otherwise dismiss the Petition is therefore DENIED. The Clerk of Court is directed to terminate ECF No. 12.

Respondents are ORDERED to file an answer to the Petition within **five business days of the date of this Order**, and Petitioner shall file any reply within **ten business days of the date of this Order**.

All communications with the Court by a *pro se* party should be filed with the *Pro Se* Intake Unit by (1) emailing the communication as an attachment in PDF format to ProSe@nysd.uscourts.gov (for instructions, see https://www.nysd.uscourts.gov/prose); (2) mailing the communication to the *Pro Se*

Intake Unit at Daniel Patrick Moynihan United States Courthouse, 500 Pearl

Street, Room 205, New York, New York 10007; or (3) hand-delivering the

communication to the *Pro Se* Intake Unit.  No documents or court filings should be

sent directly to Chambers.  Copies of correspondence between a *pro se* party and

counsel shall not be sent to the Court.

The Court directs the Clerk of Court to mail a copy of this order to Petitioner

and Mr. Tacuri, his father and next friend, at the address listed on the docket sheet

for this action.  Mr. Tacuri may receive court documents by email by completing the

"Consent to Electronic Service" form, which is attached.[2]

SO ORDERED.

Dated:  December 2, 2025
          New York, New York

_____
        JEANNETTE A. VARGAS
        United States District Judge

---

[2] For more information about consenting to electronic service, please review the attached Instructions. If Mr. Tacuri consents to receive documents by email, he will no longer receive court documents by regular mail.